26 C.C.P.A.(Patents)

## In re WALKER et al.

## Patent Appeals No. 4040.

Court of Customs and Patent Appeals.

Dec. 5, 1938.

Potter, Pierce & Scheffler, of Washington, D. C. (James F. Pierce and Charles H. Potter, both of Washington, D. C., and Eugene L. Greenewald, William F. Mesinger, and Warren J. Willis, all of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D..C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office which affirmed a decision of the examiner rejecting claims 14, 15, 17, and 18 of appellants' application for a patent for a blowpipe nozzle. No claims were allowed.

Claim 14 is illustrative and reads as follows:

"14. A blowpipe nozzle for removing surface metal from ferrous metal bodies by reaction with an oxidizing gas stream applied to the surface thereof, said nozzle having an oxidizing gas passage extending axially therethrough, said passage having an inlet and an outlet of greater cross-sectional area than said inlet, a portion of said passage between said inlet and outlet being gradually flared toward said outlet, said flared portion being constructed to reduce the velocity of said gas stream upon passage therethrough, and a portion of said passage extending backward from said outlet having the same shape and cross-sectional area as said outlet."

The claims were rejected by both tribunals below in view of the prior art. Claim 15 was also rejected as being functional and indefinite.

The references cited are: Walker, 1,-726,327, August 27, 1929; Crowe, 1,985,-080, December 18, 1934.

The application relates to a nozzle for a blowpipe used for removing portions of defective surface metal from steel slabs

or billets before they are initially rolled and before each succeeding rolling process.

The Walker patent relates to a torch tip used for gouging out seams or other defects in steel billets preparatory to rolling or forging.

The patent to Crowe is for a metal oxygen cutting process. This patent discloses a nozzle or torch tip.

The nozzles shown in the patents and the application all contain a central passage for oxygen and combustible gas passages which surround the oxygen passage. The combustible gas, when ignited, heats the surface of the metal and the stream of oxygen directed against the heated region oxidizes and disintegrates the metal along the line of cut.

The principal feature of the device of applicants, which they contend differentiates it, in a patent sense, from the devices of the references, is the shape of the oxygen passage. The portion of the said passage through which the oxygen enters under pressure is of small diameter, and relatively short. At the outer end of the entrance portion the passage flares sharply so that the gas expands and its velocity is reduced by reason of the flare. From the outer end of the flared portion the passage continues with the same cross-sectional area throughout, wherein, it is said, the gas loses its turbulence and is discharged at low velocity and with a minimum tendency to diverge. A further purpose of the constant cross-sectional area is to permit the end of the nozzle to be ground off in case any of the gas passages should become obstructed by molten metal.

In the Walker patent the entrance portion of the oxygen passage is relatively of small diameter and short. The said portion leads into a portion of greater constant cross-section which is relatively long and from the end thereof the passage flares to the tip of the nozzle. The construction of the passage in the device of this patent is for the same general purpose as that shown in the application. Both require a low velocity stream of oxygen. In the patent we read:

"For this action, a comparatively large, low velocity outflowing stream of oxygen is desired."

The oxygen stream in this patent diverges and is so intended.

The nozzle in a figure of the Crowe patent shows an oxygen passage in which there is a narrow neck and from it the passage gently flares into a portion of constant cross-sectional area from which the oxygen is discharged in a substantially non-diverging stream. The flared portion is not at a wide enough angle to create turbulence. The purpose of the construction of the passage is to produce a high velocity, straight, non-turbulent stream.

While the patent to Crowe is for a process to cut a narrow kerf or slot and is not directed to the purpose for which a patent is sought in the application herein, nevertheless, the patentee teaches that if the angle in the oxygen passage be made more diverging the oxygen stream becomes turbulent and its velocity is thereby lessened. The patent states:

"These high velocities and low pressures can not be realized if the degree of divergence of the walls of the cutting orifice is too great. When it exceeds a certain critical value, the oxygen stream will become highly turbulent and as a consequence the kinetic energy of the stream will be uselessly dissipated and its velocity will be reduced to a low order, namely to a value less than 1000 feet per second."

In the Crowe patent reference is made to the Walker device as follows:

"It will be readily seen that this invention is not a case of enlarging an oxygen orifice as in the Walker Patent 1,726,327, for example."

The decision of the examiner, in addition to rejecting claim 15 as functional and indefinite, held that:

"Claims 17, 18, 14, and 15 have been rejected as substantially met by Crowe in view of Walker. Considering Figure 2 of Crowe, his restriction 20 has been held to correspond to portion 4 of the applicant's device, Crowe's 18 corresponds to applicant's 9, and Crowe's 18a corresponds to applicant's 5 to 10. On page 3, column 1, lines 20 to 23, Crowe calls attention to Walker's nozzle as one which, for the same general purposes applicant's device is intended, utilizes an oxidizing gas stream of large area and low velocity. It has been held that in view of Walker, it would not involve invention to proportion Crowe's nozzle passage to produce a large, low velocity stream, especially in view of Crowe's teaching of how to proportion his device to secure a low velocity stream.

"In conclusion, it may be stated that Walker teaches a large, low velocity, oxy-

gen jet for de-seaming purposes, and Crowe teaches how his tapered or flared portion may be enlarged to produce a low velocity jet. Both have heating jet ports of constant cross-sectional area at the discharge portions."

The Board of Appeals, in its decision affirming that of the examiner, also held that even assuming claims 14, 17 and 18 of the application do not read upon the Crowe reference, there still would be no invention.

■ The Board stated that:

"We believe that claims 14, 17 and 18 read in terms upon the structure shown in Fig. 2 of Crowe as the cutting of a kerf would remove surface metal from ferrous metal bodies. We are also of the opinion that, even if these claims should be construed as not reading upon this reference, there would be no invention in giving a greater divergence to the tapered passage of Crowe in order to reduce the pressure. On page 2, column 1 at line 62 of Crowe, it is clearly disclosed that a greater divergence will reduce the pressure. Both Crowe and appellants employ the cylindrical portion beyond the tapering part for causing the oxygen to flow from the end of the blow pipe in a straight path rather than in a spreading one, as taught by Walker. It is our view, therefore, that when it was found that the flame of Walker spread out too much, it would be obvious, after reading the discussions in Crowe relative to Walker, to narrow the flame with the cylindrical terminal without increasing the pressure."

We agree with this holding of the board. It appears to us that no error was made by the tribunals below and that the decision of the board should be affirmed.

■ Appellants contend that the Crowe patent is not a valid reference because although the application for the Crowe patent was filed December 3, 1929 and the application herein was filed May 9, 1931, the Crowe patent was not issued until after the filing date of appellants' application.

We cannot agree with this contention. The Crowe patent may be properly used alone or with other references in the rejection of the claims. The case of In re Youker, 77 F.2d 624, 22 C.C.P.A., Patents, 1294, is decisive in this respect. In that case we said: ′

"Since he has not antedated them (those applications having been filed prior to the application of appellant), they show prior invention of their subject-matter, and we must assume that appellant may not properly be held to be the first inventor of anything disclosed by them, or of anything not patentably distinct from them. In re Smith, 36 F.2d 522, 17 C.C.P.A., Patents, 752."

■ The application here is for a patent on a device and the contention of appellants that the principles and theories of operation of his device differ from those of the references cannot be considered. In re Modine, 57 F.2d 355, 19 C.C.P.A., Patents, 1058.

It is argued by the Solicitor for the Patent Office that the different purpose for which appellants allege their device is used appears to be merely stated in the preamble of the claims and that such a statement does not make the combination of elements any different. He cites In re Dawe, 53 F.2d 543, 19 C.C.P.A., Patents, 728; Braren v. Horner, 47 F.2d 358, 18 C.C.P.A., Patents, 971; In re Garratt, 63 F.2d 113, 20 C.C.P.A., Patents, 878, and In re Weingartner, 58 F.2d 442, 19 C.C.P.A., Patents, 1202, as applicable.

We agree with the solicitor, but even if we did not, we would be compelled to hold that the purpose of the device of the application is identical with that of the device of the Walker patent. This purpose is to remove surface defects in steel slabs or billets by means of a low velocity oxygen stream.

In view of our conclusion it is not necessary to discuss the rejection of claim 15 on the ground of functionality and indefiniteness.

We are of opinion that all of the claims were properly rejected on the Crowe patent in view of the Walker patent.

The decision of the Board of Appeals is affirmed.

Affirmed.